Lorenz Wolffers (LW6950)
The Corstange Law Group
325 West 38th Street, Suite 1203
New York, NY 10018
P: 646-875-8011 F: 212-624-0270
lorenz@corstange.com

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rokt Corp.,<br><br>        Plaintiff,<br><br>vs.<br><br>Laura B. Zuchowski, in her official capacity, Director of USCIS Vermont Service Center;<br><br>Kenneth T. Cuccinelli II, in his official capacity, Acting Director of United States Citizenship and Immigration Services;<br><br>Chad Wolf, in his official capacity, Acting Secretary of Department of Homeland Security;<br><br>United States Citizenship and Immigration Services; and<br><br>Department of Homeland Security,<br><br>        Defendants | Case No.: **CV 19-11158**<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT** |

# I. INTRODUCTION

1. Plaintiff Rokt Corp. is a global leader in marketing technology that provides tools and services to major international clients such as eBay, Apple, Ticketmaster, and Virgin. Plaintiff seeks to employ a Strategic Account Manager and has therefore filed a Petition for H-1B Visa Classification, which would allow the Plaintiff to retain the services of a highly qualified foreign employee. The United States Citizenship and Immigration Services ("USCIS") has wrongfully denied this Petition.

2. This action seeks declaratory and injunctive relief against Laura B. ZUCHOWSKI, Director of the Vermont Service Center, USCIS, U.S. Department of Homeland Security ("DHS"); Kenneth T. CUCCINELLI II, Acting Director, USCIS; Chad WOLF, Acting Secretary, DHS; USCIS, and DHS (collectively "the Government") under the Administrative Procedure Act ("APA"), 5 U.S.C. §702, based on the Government's improper denial of a 1-129 Petition for H-1B Classification for a Nonimmigrant Worker (the "Petition") filed by Plaintiff ROKT CORP ("Rokt") on behalf of prospective employee Nao Kobayashi (the "Employee-Beneficiary") whom Rokt sought to employ in the position of Strategic Account Manager.

3. This is an action brought pursuant to Section 10b of the Administrative Procedure Act 5 U.S.C. § 702, et. seq., seeking to hold unlawful and set aside the October 4, 2019 decision by the Director of the Vermont Service Center denying the Petition for H-1B Classification filed by Rokt on behalf of he Employee-Beneficiary.

4. The Petition was denied on the sole ground that the position offered to the Employee-Beneficiary did not qualify as a so called "Specialty Occupation". The denial is contrary to established legal precedent as well as to USCIS's own policy and is not supported by

the record and therefore arbitrary, capricious, and an abuse of discretion. Hence, the Plaintiff requests that the Court hold unlawful and set aside the October 4, 2019 decision.

## II. PLAINTIFF

5.      Plaintiff Rokt Corp. is a Delaware corporation with its principal place of business in New York, NY. It provides tools and services to some of the biggest eCommerce companies in the world, including eBay, Apple, Ticketmaster, and Virgin. The company's worldwide operations include some 170 employees, including about 70 employees in the U.S. In 2018, it generated revenues of close to $80 million.

## III.  DEFENDANTS

6.      Defendant Laura B. Zuchowski is the Director of the Vermont Service Center of USCIS and in that capacity she signed the aforementioned denial of the Petition.

7.      Defendant Kenneth T. Cuccinelli II is the Director of USCIS and he is responsible for USCIS's policies, practices, and procedures and overseas the USCIS officer responsible for making the decisions at issue in this case.

8.      Defendant Chad Wolf is the Secretary of the Department of Homeland Security (DHS), the federal agency encompassing USCIS, which is responsible for administration and enforcement of the immigration and nationality laws of the United States.

9.      Defendant U.S. Citizenship and Immigration Services ("USCIS") is an agency of the Department of Homeland Security ("DHS") and is responsible for overseeing the adjudication of immigration benefits.

10. Defendant U.S. Department of Homeland Security (DHS) is a cabinet department of the U.S. federal government responsible for immigration-related services, enforcement, and investigations. DHS oversees USCIS and its implementation of federal law.

## IV. JURISDICTION & VENUE

11. This case arises under the Immigration and Nationality Act (INA), 8 U.S.C. §1101 *et seq*. and the Administrative Procedure Act (APA), 5 U.S.C. §701 *et seq*. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as a civil action arising under the laws of the United States. This Court also has authority to grant declaratory relief under 28 U.S.C. §§2201-02, and injunctive relief under 5 U.S.C. §702, and 28 U.S.C. §§ 1361-62.

12. Venue is proper with this Court pursuant to 28 U.S.C. §1391(e) because this is a civil action in which the Defendants are employees or officers of the United States, acting in their official capacity, and agencies of the United States and because the Plaintiff resides in this district and no real property is involved in this action.

13. Plaintiff may seek judicial review upon denial of the visa petition without any further administrative appeal. See, e.g., EG Enters. v. DHS, 467 F. Supp. 2d 728, 732-33 (E.D. Mich. 2006) (H-lB petition denial; USCIS agreed in its crossmotion that exhaustion not required); RCM Technologies, Inc. v. US. Dept. of Homeland Sec., 614 F. Supp. 2d 39, 45 (D.D.C. 2009) ("[P]laintiffs need not pursue an AAO appeal before seeking judicial review of denied visa applications in federal court.").

## V.  FACTUAL BACKGROUND & CASE HISTORY

14.     On April 4, 2019, the Plaintiff filed an I-129 Petition for a Nonimmigrant Worker (case number EAC1917450604) asking that the Beneficiary Ms. Nao Kobayashi, a citizen of Japan, be classified as a specialty occupation worker pursuant to Section 101(a)(15)(H)(i)(b) [8 USC 1101] of the Immigration and Nationality Act ("INA"), which would allow her to work in the U.S. and to obtain an H-1B visa.

15.     In its Petition, the Plaintiff demonstrated that it wanted to employ the Beneficiary as a "Strategic Account Manager". As required by law, enclosed to the Petition was a certified Labor Condition Application for Nonimmigrant Workers issued by the Department of Labor ("DOL"). In this Labor Condition Application Plaintiff determined that the job description of "Strategic Account Manager" was most closely aligned with the job description of "Market Research Analysts and Marketing Specialists" as outlined in the DOL's "Standard Occupational Classification" ("SOC"). Plaintiff chose therefore SOC Code 13-1161 for "Market Research Analysts and Marketing Specialists" when submitting its Labor Condition Application.

16.     In a support letter submitted with the Petition, Plaintiff included the following task list for the position:

- Master the functionality of the Rokt platform and utilize the insights and data to quantifiably optimize campaigns across the portfolio to deliver on individual and client Key Performance Indicators (KPIs);
- Uncover marketing goals and identify relevant Rokt Solutions for leading Global, National, and Regional businesses in collaboration with the General Manager of Japan, Business Development Manager in Japan, and the New York-based account management team;
- Build and create robust quarterly account reviews;
- Run Tableau analysis on data to create key insight reports, which includes optimization areas for improvement on metrics such as engagement rate, conversion rate, ROI, and payback;

- Create and manage an effective team relationship between all relevant stakeholders in Japan and the US;
- Analyze data through online tools such as Salesforce and Hubspot and analytics platforms such as Tableau to create strategy to support the broader team in new business growth and the ownership of client strategy and ongoing strategic account recommendations to drive client return;
- Perform tactical account planning and relationship building;
- Develop relevant marketing reports and client-facing account proposals with the support of cross-functional teams;
- Build and maintain strong direct client relationships and relationships with designated media agencies;
- Perform monthly and quarterly revenue forcasting and account plans.

17.   In its support letter, the Plaintiff pointed out that according to the DOL's Occupational Outlook Handbook (OOH) a position matching SOC Code 13-1161 (Market Research Analysts and Marketing Specialists) needs at a minimum an undergraduate degree in a specific field. The Plaintiff enclosed printouts from the OOH, including one that is titled "How to Become a Market Research Analyst", which reads in part as follows:

> Market research analysts typically need a bachelor's degree in market research or a related field. Many have degrees in fields such as statistics, math, or computer science. Others have backgrounds in business administration, the social sciences, or communications.
> Courses in statistics, research methods, and marketing are essential for these workers.
> Courses in communications and social sciences, such as economics or consumer behavior, are also important.
> Some market research analyst jobs require a master's degree. Several schools offer graduate programs in marketing research, but many analysts complete degrees in other fields, such as statistics and marketing, and/or earn a master's degree in business administration (MBA). A master's degree is often required for leadership positions or positions that perform more technical research.

18.     On June 27, 2019 USCIS issued a Request for Evidence ("RFE") stating that the Plaintiff's initial filing had failed to establish that the position offered to the Employee-Beneficiary met the requirements of a "specialty occupation" as defined by law.

19.     On September 20, 2019, the Plaintiff filed a timely response to the RFE providing additional documentation that demonstrated that the offered position did indeed meet the requirements of a "specialty occupation". Through Counsel, Plaintiff emphasized and documented that (a) a degree in a specific field is normally the minimum requirement pursuant to the OOH, that (b) the degree requirement is common to the industry according to two well-established experts, that (c) the Plaintiff normally requires a specific undergraduate degree as a minimum requirement for the position, and that (d) the position is highly complex and therefore requires at a minimum a degree in a specific field.

20.     On October 4, 2019, USCIS issued a decision denying the Plaintiff's I-129 Petition for a Nonimmigrant worker. The decision indicated that the Plaintiff had failed to establish that the position offered to the Employee-Beneficiary meets the requirements of a "specialty occupation".

## VI.  LEGAL BACKGROUND

21.     The sole legal issue here is whether the position offered by the Plaintiff to the Employee-Beneficiary meets the legal requirement of a "specialty occupation".

22.     The INA defines "specialty occupation" as an occupation that requires "theoretical and practical application of a body of highly specialized knowledge" and "attainment of a bachelor's or higher degree in a specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." INA §214(i)(1) [8 USC §1184(i)(l)]

23.  The regulations implementing the INA determine that a position needs to meet just one of the following four criteria to qualify as a "specialty occupation".

(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

(2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent-for the position; or

(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A).

24.  USCIS wrongfully concluded that Plaintiff did not establish a single one of these criteria when denying the Petition.

25.  Indeed, a correct reading of the facts and of the law establishes that the Petitioner meets at least one and most likely even two or three of the criteria as per 8 C.F.R. § 214.2(h)(4)(iii)(A).

# VII.   COUNT ONE

# VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

# 5 U.S.C. 701, ET SEQ.

26. Plaintiff re-alleges and incorporates herein by reference, as if fully set forth herein, the allegations in paragraphs 1–25.

27. The Administrative Procedure Act requires this Court to hold unlawful and set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

28. The October 4, 2019 decision by USCIS denying Plaintiff's Petition was arbitrary, capricious, an abuse of discretion, and not in accordance with law.

29. As discussed above, Plaintiff needs to demonstrate by a preponderance of the evidence that just one of the four criteria listed in 8 C.F.R. §214.2(h)(4)(iii)(A) is met in order to establish that a position is a "specialty occupation."

30. USCIS acted arbitrarily and capriciously in finding that the current position offered to the Employee-Beneficiary did not meet the first of the four criterion specified above, namely that "a baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position."

31. In its decision, USCIS relied on the DOL's Occupational Outlook Handbook, which it quotes as follows: "Market research analysts typically need a bachelor's degree in market research or a related field. Many have degrees in fields such as statistics, math, or computer

science. Others have backgrounds in business administration, the social sciences, or communications."

32. Because the OOH refers to different educational backgrounds that a successful job applicant in the field may have and that may be an acceptable entry level education for a job with a U.S. employer USCIS mistakenly concludes that the OOH "does not indicate that Market Research Analyst positions normally require a minimum of a bachelor's degree in a specific specialty."

33. It appears to be USCIS's interpretation that only positions that require graduation from a singular specific degree program may be considered "specialty occupations". Any job where a U.S. employer may accept candidates with various academic degrees, so the USCIS conclusion, ought not to be considered "specialty occupations", no matter how closely related these academic programs are.

34. This interpretation of the law, however, is contradicted by the plain language of the statute, by precedent, and by USCIS's own past understanding of its own regulations. It would also make very little sense in a world where technology is constantly changing professions, make old professions disappear, and creates new professions at a rapid pace.

35. As we explained above, the INA requires the "attainment of a bachelor's or higher degree in a specific specialty <u>(or its equivalent)</u> as a minimum for entry into the occupation in the United States" in order to qualify a position as "specialty occupation". INA §214(i)(1) [emphasis added]. Congress explicitly drafted the statute broadly including both jobs that require either a specific degree or its equivalent. The language of the statute therefore itself emphasizes that a specific degree may not be the only path to a "specialty occupation".

Congress therefore clearly did not ask for a narrow reading of the statute. USCIS's interpretation of the statute that allows only for positions that require a singular specific academic degree to be considered "specialty occupations" is quite obviously not covered by Congress's intent and therefore arbitrary and capricious. By explicitly stating that the "equivalent" of a particular degree will suffice Congress clearly wanted to open up the field of "specialty occupations" acknowledging that there are a number of highly complex professions where graduates with different, albeit normally related degrees may successfully enter the field.

36. In accordance with that reading of the statute, courts have made it clear that a proper interpretation of the law does not allow to narrow down the list of eligible positions to those that allow only a single specific academic background as entry requirement. We refer here to *Raj & Co. v. USCIS* (85 F. Supp. 3d 1241 (W.D. Wash. 2015), which while not in the same jurisdiction as this Court illustrates the issue beautifully.

37. The court in *Raj & Co.* concluded that H-1B classification for the position of "Marketing Analyst & Specialist", which is the same SOC category as selected for the position in Plaintiff's Petition, cannot be excluded just because the OOH allows for different educational backgrounds as entry level requirements.

38. Furthermore, the court in *Raj & Co.* wrote:

> [USCIS]'s approach impermissibly narrows the plain language of the statute. The first regulatory criterion does not restrict qualifying occupations to those for which there exists a single, specifically tailored and titled degree program. Indeed, such an interpretation ignores the statutory and regulatory allowance for occupations that require the attainment of the "equivalent" of specialized bachelor's degree as a threshold for entry. 8 C.F.R. § 214.2(h)(4)(ii) ; 8 U.S.C. § 1184(i). By including this language, Congress and the INA recognized that the needs of a specialty occupation can be met even where a specifically tailored baccalaureate program is not typically available for a given field."

39. The court in Raj & Co. followed other precedent, in particular *Tapis Intern. v. I.N.S.*, 94 F.Supp.2d 172 (D. Mass., 2000), which stated in no uncertain terms:

> For the "equivalent" language to have any reasonable meaning, it must encompass not only skill, knowledge, work experience, or training, see e.g., Augat, Inc. v. Tabor, 719 F.Supp. 1158, 1160-61 (D.Mass.1989) (finding occupation a "profession" under prior regulatory framework where alien had no bachelor's degree), but also various combinations of academic and experience based training. It defies logic to read the bachelor's requirement of "specialty occupation" to include only those positions where a specific bachelor's degree is offered. In fields where no specifically tailored baccalaureate program exists, the only possible way to achieve something equivalent is by studying a related field (or fields) and then obtaining specialized experience. By including the "or its equivalent" language, the statute and regulations recognize that the needs of a specialty occupation can be met through education, experience, or some combination of the two.

40. More recently, the court in *Relx, Inc. v. Baran* (D. D.C., 2019) also strongly rejected the notion of one single academic path to a "specialty occupation":

> This position is untenable. There is no requirement in the statute that only one type of degree be accepted for a position to be specialized. The statute and regulations simply require that a "position actually requires the theoretical and practical application of a body of highly specialized knowledge, and the attainment of a bachelor's or higher degree in the specific specialty [is a] minimum requirement for entry into the occupation." [..] In other words, if the position requires the beneficiary to apply practical and theoretical specialized knowledge and a higher education degree it meets the requirements. Nowhere in the statute does it require the degree to come solely from one particular academic discipline. [p. 27]

41. USCIS's interpretation that only jobs that have an exclusive academic education requirement may be considered "specialty occupations" also clearly contradicts previous

USCIS's statements. For illustration, we are referring here to a decision by the USCIS Administrative Appeals Office (*Matter of F-C-U-, Inc.*, ID# 14666 (AAO Dec. 9, 2015)):

> Contrary to the Petitioner's assertion that we "[dismiss] the idea that an occupation could be a specialty occupation when a degree from more than one field of study meets the minimum educational requirements," <u>we acknowledge that a position may qualify as a specialty occupation if it permits, as a minimum entry requirement, degrees in more than one directly related specialty</u>. See section 214(i)(l)(B) of the Act; 8 C.F.R. § 214.2(h)(4)(ii). This also includes even seemingly disparate specialties, provided, again, that the Petitioner establishes how each acceptable, specific field of study is directly related to the duties and responsibilities of the particular position. See Royal Siam Corp. v. Chertoff, 484 F.3d at 147 (describing "a degree requirement in a specific specialty" as "one that relates directly to the duties and responsibilities of a particular position"). [emphasis added]

42. If USCIS now determines that the position it took in the above-referenced AAO decision is no longer tenable it must go through the proper rule making channels pursuant to Section 553 of the APA in order to establish a completely new interpretation of the statute. It is widely accepted that in executing a significant policy change or other reversal an agency is required to comply with applicable APA procedural requirements. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. __, 135 S. Ct. 1199, 1206 (2015) (holding that the APA "mandate[s] that agencies use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance."). A clandestine change of the interpretation of a significant part of the statute, however, is arbitrary and capricious and cannot be tolerated by a court of law.

43. Finally, USCIS's interpretation of the statute also does not hold up in a "real world test". The enormous speed of technological development over the last 25 years has brought job after job to the surface for which there is not yet a clearly defined academic path. A

lot of these jobs are highly complex and should therefore without a doubt be considered specialty occupations. To refuse the "specialty occupation" classification only because of the lack of a single academic trajectory to such a job would make very little sense and was obviously not the intent of Congress.

## VIII.   COUNT TWO

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

## 5 U.S.C. 701, ET SEQ.

44. Plaintiff re-alleges and incorporates herein by reference, as if fully set forth herein, the allegations in paragraphs 1–43.

45. The second of the four 8 C.F.R. §214.2(h)(4)(iii)(A) grounds is that the "degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree."

46. USCIS acted arbitrarily and capriciously in finding that the Plaintiff did not demonstrate that a degree requirement is common to the industry, namely by disregarding the testimony of two well established experts without providing clear criteria when and under what conditions such testimony would be acceptable. In effect, and for all practical purposes, Defendants completely ignored this highly probative and dispositive evidence.

47. To establish that a degree is a requirement common to the industry Plaintiff provided testimony by two well-regarded experts:

48. Dr. Al Kamienski is a professor of Finance, Economics, Accounting, Strategic Management, and Business Communications at North Park University. In addition to his extensive teaching experience, Dr. Kamienski has provided strategic consulting on management and business development for over two decades. In his work with organizations ranging from large corporations to non-profits, he has consulted on marketing strategy to fulfill many types of needs, and is well versed on the marketing landscape. Dr. Kamienski's experience in the field clearly qualifies him to discuss the industry standard of requiring Strategic Account Managers (and those in similar roles) to have bachelor's degrees in marketing or a related field. As a part of his research to support the claim that requiring a degree in Marketing or a related field is common to similar positions in the industry, he has consulted with recruiters in the field.

49. Professor Robert Bohn is a professor of Marketing as well as a senior communications and marketing executive with more than 30 years of teaching, management, and consulting experience. He has directed marketing services for well-known organizations such as The Leukemia & Lymphoma Society, ESPN, Forbes, and Time Magazine. He has also taught marketing courses at New York University, the Fashion Institute of Technology, and Fordham University.

50. The Plaintiff provided to USCIS extensive background materials regarding the two experts, including letters of recommendations and *curricula vitae.* As outlined above, the materials reflect that the two experts do not only have stellar academic credentials but extensive experience in the business world.

51. Both experts concluded that the position of Strategic Account Manager as described by the Plaintiff in its I-129 Petition requires at a minimum an undergraduate degree in Marketing or a related field and that such a degree requirement would be common to the

industry. Dr. Kamienski wrote "Given the analytical, technical, and quantitative complexity in the subject role of Strategic Account Manager with Rokt, it is typical for employers of such individuals to require that professionals working in such quantitative positions have at least a bachelor's degree in Marketing or a related field. Based both on my review of the aforesaid job duties and my extensive background in academia, consulting and observations of the job placement patterns of graduating students, I believe that the stated requirements for the position are fair, reasonable, and necessary." And Dr. Bohn added: Indeed, it is common for companies such as Rokt to require [an undergraduate degree in marketing or a related field] for a candidate in similar positions throughout the industry."

52. Nevertheless, and without exploring the issue in any detail USCIS claims that "[t]he Professors' expertise, regarding current industry degree requirements for Strategic Account Manager positions is not established in the record."

53. With regards to the proffered expert testimony the October 4, 2019 USCIS decision is full of vague and not entirely correct references such as "[b]ased on the documentation provided, most of the Professors' experiences have been in an academic setting within a university." *Inter alia*, it is not accurate to allege that the two experts lack any real world professional experience. As we noted before and as it is well established in the record, the two experts have both many years of industry experience. In any case, USCIS does not specify how much industry experience would be necessary to meet the government's standards and to make their testimony acceptable.

54. In order to justify its disregard for the proffered expert testimony, the USCIS decision merely copies verbatim from a more than 30 year old administrative appeals decision (*Matter of Caron International, Inc.*, 19 I&N Dec. 791 (Comm. 1988)), which states that the

government "may, in its discretion, use as advisory opinions statements from universities, professional organizations, or other sources submitted in evidence as expert testimony. However, where an opinion is not in accord with other information or is in any way questionable, USCIS is not required to accept or may give less weight to that evidence." USCIS does not elaborate in any way, how this decision applies to Plaintiff's Petition. It does not outline whether USCIS concluded that the testimony is not in accord with other information in the record or what parts of the testimony may be questionable. It also does not elaborate whether USCIS rejects the testimony in its entirety or whether it just give it less weight.

55. USCIS's refusal to thoroughly review and discuss the submitted evidence with regards to the expert testimony in any detail renders its decision arbitrary and capricious as it does not allow the reader of the decision to ascertain whether USCIS followed a preponderance of the evidence standard as required in most immigration proceedings. *U.S. v. Cardozo-Fonseca*, 480 U.S. 421 (1987)

56. USCIS disregards the proffered expertise without referring to a clear standard for expert testimony and without identifying the source for such a standard. Disregarding the testimony of expert witnesses without disclosing the applied standards of review is by definition arbitrary and capricious and an abuse of discretion.

# IX.  COUNT THREE

# VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

# 5 U.S.C. 701, ET SEQ.

57. Plaintiff re-alleges and incorporates herein by reference, as if fully set forth herein, the allegations in paragraphs 1–56.

58. The third of the four 8 C.F.R. §214.2(h)(4)(iii)(A) grounds is that the employer normally requires a degree or its equivalent for the position.

59. The Plaintiff submitted to the Government the names and information about the academic credentials of the nine most recent employees in the position of Strategic Account Manager and Account Manager; the latter being a similar albeit somewhat more junior position than the Strategic Account Manager. The Plaintiff also submitted *CV*s of the referenced employees as well as in most cases copies of their undergraduate diplomas.

60. The submitted information reflected that all the hires in the same or similar position as offered to the Employee-Beneficiary have at least an undergraduate degree, which is specific to the proffered position pursuant to the OOH.

61. Even though the submitted evidence clearly demonstrates that the Plaintiff routinely hires employee for these position that have at least an undergraduate degree that is specific pursuant to the OOH USCIS did not accept the proffered evidence as sufficient.

62. The regulations, as outlined above, require evidence that the employer "normally" hires employees with at least an undergraduate degree related to the position. USCIS has failed to explain why the information about the nine most recent hires is not sufficient and why more historical data is required.

63. The information about the nine most recent hires should clearly suffice to demonstrate a pattern as required under the "normally" standard of the regulations. To disregard this information is arbitrary and capricious and constitutes a clear abuse of discretion.

64. For all these reasons, the denial of Plaintiff's Petition violated applicable law and regulations as well as USCIS's own policy and was therefore arbitrary and capricious. This Court should therefore hold unlawful and set aside USCIS's October 4, 2019 decision.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Hold unlawful and set aside USCIS's October 4, 2019 decision denying Plaintiffs I-129 Petition;

(3) Order Defendants to approve Plaintiffs I-129 petition

(4) Grant reasonable attorneys' fees and costs as provided under the Equal Access to Justice Act and the APA;

(5) Grant such further relief as the Court deems just and proper.

Dated: December 4, 2019

/s/ Lorenz Wolffers

Lorenz Wolffers
The Corstange Law Group
325 West 38th Street, Suite 1203
New York, NY 10018
Ph: 646 875 8011
Fax: 212 624 0270
E: lorenz@corstange.com